### John Rogers v. The State.

### Charles Lyman v. The State.

*Nos. 729 and 731.  Decided November 18.*

**1. Charge of Court.**—The correctness of a charge of the court is tested by the evidence adduced on the trial.

**2. Robbery—Evidence as to Intent.**—On a trial for robbery, where the only evidence sustaining the intention to rob was that a pistol was taken from the prosecutor, his evidence further showing that at the time he had on his person, in addition to the pistol, a watch and chain and a large amount of money, which the accused neither took nor attempted to take, from which evidence it was insisted that the pistol must have been taken for some other purpose than with intent to rob: *Held*, that where the issue as to intent has been fairly and fully submitted in the charge to the jury, the conviction will not be disturbed.

Appeal from the District Court of Williamson.  Tried below before Hon. F. G. Morris.

Appellants, John Rogers and Charles Lyman, were separately indicted for a joint robbery committed by them upon S. S. Hardin on the 13th of February, 1893, at which time they took a pistol from said Hardin, of the value of $20.  They were tried separately, and each trial resulted in a conviction, the punishment assessed in each case being imprisonment in the penitentiary for ten years.  The two cases are identical as to indictment, facts proved, etc., and were decided as one case on the appeals. Under instructions from the court we give the facts, in substance, from the records, as follows:

On Monday, the 13th of February, 1893, Hardin was and had been for eleven years constable at the town of Round Rock, in Williamson County. On that morning appellants, Rogers and Lyman, who were strangers, appeared in Round Rock and attracted the attention of Hardin and other citizens by their suspicious movements and conduct in the several stores and other places which they visited; so much so that they were watched by these parties.  When the train from Round Rock to Georgetown was about to start, these appellants bought tickets and got upon the train. Hardin, who was at the depot at the time, called the attention of the conductor to the two men.  After reaching Georgetown the conductor saw these parties at several places, and was particularly impressed with their suspicious movements and conduct in the Georgetown Hardware Company's store, where there was a safe which they seemed to be interested in and talking about.  The witness Byron Robinson also saw appellants and a third party in the second story of the First National Bank building in Georgetown, over where the vault was situated.  At 5:15 p. m. the appellants again boarded the train from Georgetown for Round Rock, and were again noticed by the conductor before reaching Round Rock.  Hardin saw them get off the train and go to the hotel.  The train from Austin to

Taylor was due at Round Rock at 10:30 p. m., and Hardin and three friends, Anderson, Peterson, and Bernheim, went to the depot at the time to see if appellants would go off on that train. They did not; and Hardin and his friends, after going uptown, parted.

Hardin, still believing appellants meant mischief, concluded to continue his lookout for them.     After describing his movements for some minutes, he says:   I then went back to Cox's corner and stepped into the door of his store.   I saw these men about 20 feet up the street.   I thought the men were Anderson, Peterson, and Bernheim, who had left me a short time before.   The three men walked to me and came around me.   One of the men was Lyman.   He had a black handkerchief on his face, covering part of his nose and the balance of the lower part of his face.   Lyman asked if I lived there.   I told him that I did.   Lyman said, "We are officers looking for a negro."   At that time three more men came around the corner and put pistols to my head.   Lyman told them to take my gun.   Rogers then took a pistol and put it to my neck, and said, "Give me your pistol, or I'll break your God damn neck."   No one had hold of me then.   The third man from my right took my pistol. Lyman hit me with his pistol first.   Rogers then hit me.   I began to halloo.   Lyman said to them, "Cut his God damn wind off."   They all hit me with their pistols.   I had four wounds on my head, cut to the bone, made by the pistol strokes, that were large enough to be distinguishable, and then I had several other smaller wounds on the top of my head.   During this time Rogers had his hands on my throat, choking me. I pulled his hands off my throat several times, and yelled as loud as I could.   Lyman then said, "Drag him around the corner," which they did, and then threw me down on the sidewalk.   All the parties then left. My pistol was reasonably worth in the market twenty odd dollars.   I did not give my consent to Rogers or either one of the other men who were acting with him, to take my pistol.   I have never seen the pistol since.   The next time I saw Rogers was about three weeks after the occurrence that I have related.   I got on the morning train going to Taylor, at Round Rock.   After travelling some distance, I walked through the train, and in the last car, when opposite the third or fourth seat, I saw Lyman sitting on the last left hand seat of the car, and recognized him instantly as one of the men who robbed me of my pistol.   He had his head down on one of his hands.   I walked on to the water cooler, and looked over the train to see if I could see more of the crowd that robbed me.   I saw Rogers further up in the car, coming towards Lyman. I also recognized him as one of them even before he reached Lyman. W. S. Brookshire, the sheriff of this county, was on the train, and I went and told him about two of the men who had robbed me being on the train.   I then talked to the conductor.   I then went to the negro coach and remained there sometime.   Rogers came and talked to the conductor,

and then went back to his seat. When near Taylor, Lyman and Rogers came into the next coach in front of the one in which they had been sitting. Brookshire and myself were in the rear of them. Brookshire tapped on the window in the end of the coach, and at that time Rogers and Lyman, Brookshire and myself all went on the platform of the car. After remaining there a very short period of time, I noticed they were going to jump off the train. Brookshire grabbed Lyman and I grabbed at Rogers. Rogers jumped off the train, and I did likewise. When I got up Rogers was about twenty steps from me. He started to run, and I pulled my gun on him and stopped him. Lyman was also arrested, and we brought the men to Georgetown jail.

I do not know how or when the parties who robbed me left Round Rock. The robbery occurred about one or one and a half hours after the 10:30 p. m. passenger train left. It was not a very dark night. Could see a man forty or fifty yards. There were no stars shining that night. Were a few flying clouds. Lyman had a black handkerchief partly over his face. I did not see Rogers from the time that he arrived on the train from Georgetown, about 6 o'clock in the evening, until I saw him when I was attacked that night about 11:30 or 11:40 o'clock. I never saw Rogers or Lyman before I saw them in Round Rock on February 13, 1893. When these men came to me at Cox's door I had about $250 in currency and about $25 in silver in my pockets. Also had on my watch and chain. These men did not attempt to take from me any money or my watch and chain, or anything else except my pistol. They did not have time from the time they first caught me. These men did not ask me for any money or for anything else. They only took my pistol. After my pistol had been taken, and I had been assaulted with the pistol, and while they were taking me around the corner, I took my money out of my pocket and threw it into the streets. These men did not look for the money or say anything about money. From the time they robbed me of my pistol until they ran away I did not give them time to make any demand of me for watch or money. I was hallooing and trying to get away, and they were struggling to hold me, and choke me to prevent my yelling. They never had time to search me. Lyman was telling them all the time to shut off my God damn wind, and when they saw they could not keep me from yelling, they turned me loose and ran.

W. S. Brookshire testified as follows: I was on the train the day that Rogers and Lyman were arrested, and arrested Lyman. Sam Hardin came to me on the train and informed me that two of the men who had robbed him of his pistol about two weeks before were on the train, and he pointed them out to me. A short time afterwards the two men, Rogers and Lyman, went out upon the platform between two of the cars, and Hardin and myself followed. When we got in about three-fourths of a mile from

Taylor, Lyman acted like he was going to jump off the train, and I grabbed him. Instead of jumping off the train he swung from the steps of one coach to those of the other coach, and I went off to the ground. About a hundred yards further down the track, Lyman jumped off and I pursued him. I fired two shots at him with my pistol. The first I fired to try to stop him, without trying to hit him. The second I fired and tried to hit him. I had no warrant for his arrest. When I go after a man, I go after him to get him, whether I have got a warrant or not. I always get him if I can. I continued to chase Lyman until we got into Taylor, when Lyman jumped on a horse and rode some distance, when he jumped off the horse. I jumped on a horse also and continued in pursuit. After Lyman left his horse he left the road and went on the inside of an enclosure, and I went on around and overtook him. He had no pistol when arrested. I brought Rogers and Lyman to jail that night, and they have been here ever since.

Upon the question of intent to rob, the court charged the jury as follows: " If the jury believe from the evidence that defendant, with others, took from S. S. Hardin his pistol on the occasion that he is charged with having robbed said Hardin, but that defendant did not intend to participate in a robbery of said Hardin, but participated in the taking without intent to appropriate said pistol to the use of the persons so taking, or to the use of some one or more of them, but solely for the purpose of protecting himself from what reasonably appeared to him and which he believed to· be an attack or effort on the part of said Hardin to shoot defendant or any of the persons there with him, then defendant would not be guilty of robbery, and you should acquit him if you so find."

The court also gave defendant's special instructions as follows: " If the jury have a reasonable doubt as to whether the defendant and those acting with him committed the offense of robbery upon S. S. Hardin, they must find the defendant not guilty; but if they believe that the defendant and those acting with him used more force than was necessary to disarm S. S. Hardin, and inflicted serious bodily injury upon him, then they may find him guilty of an aggravated assault, and assess his punishment by a fine not less than $25 and not more than $1000, or by imprisonment in the county jail for not less than one month nor more than two years, or by both such fine and imprisonment."

*Fisher & Chessher*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Rogers and Lyman were separately indicted, tried, and convicted for robbing S. S. Hardin of a pistol.

Rogers moved for a new trial upon the grounds: 1. Error in charge of court (error not specified). 2. Verdict is contrary to the law and

evidence.   3.  Evidence insufficient to support the verdict.   In addition
to these grounds, Lyman urged error in not postponing the case.

The charge of the court is correct when tested by the evidence; and
upon the vital issue of the case, namely, was the pistol taken feloniously,
that is, '' with intent to deprive the owner of its value, and to appropriate
same to the use and benefit of either of the parties engaged in the taking,''
the court gave the appellants' requested instructions.   There is no bill
of exceptions in either case.

As Hardin, when the pistol was taken, had on his person a watch and
chain, and in his pockets $250 in currency and $25 in silver, and as nei-
ther of the parties engaged in the assault upon him had made an attempt
to take or alluded to the money or watch, appellants contend that rob-
bery was not intended, but that the pistol must have been taken for some.
other purpose than an intention to deprive Hardin of the value of the
pistol, and to appropriate it, etc.   As said above, this theory of the case
was submitted in both cases to the jury by instructions, at the instance.
of counsel for appellants.

We have read the statement of facts in both cases carefully, and in con-
nection with able argument of counsel for the appellants, and feel that
we would not be warranted in reversing the judgments, on either ground
relied upon, to-wit, want of identity of appellants, and that *robbery* was
not intended.

The Reporter will give the facts.

*Judgments affirmed.*

Judges all present and concurring.